**NOT FOR PUBLICATION**

```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY


EARICK DORSEY,                     :
                                        Civil Action No. 09-6519 (JBS)
             Petitioner,           :

             v.                    :    **OPINION**

ATTORNEY GENERAL OF THE            :
UNITED STATES,
             Respondent.           :
```

**APPEARANCES:**

Petitioner pro se                       Counsel for Respondent
Earick Dorsey                           Karen Helene Shelton
Federal Detention Center                Assistant U.S. Attorney
Philadelphia, PA                        402 East State Street
                                        Trenton, NJ 08640

**SIMANDLE**, District Judge

Petitioner Earick Dorsey, a prisoner previously confined at the Federal Correctional Institution at Fort Dix, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1] The respondent is the Attorney General of the United States.

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

I. BACKGROUND

A. The Second Chance Act

Pre-release Residential Re-Entry Center ("RRC") assignments are governed by 18 U.S.C. § 3624(c)(1), which was amended in 2007 by the Second Chance Act, Pub. L. No. 110-199, effective April 9, 2008. In essence, the Act extends the maximum amount of time that the Bureau of Prisons may place an inmate in an RRC to twelve months.

The Second Chance Act provides, in pertinent part:

> (1) In General.--The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> (2) Home confinement authority.--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.
>
> ...
>
> (4) No limitations.--Nothing in this subsection shall be construed to limit or restrict the authority of the Director of the Bureau of Prisons under section 3621.
>
> ...
>
> (6) Issuance of regulations.--The Director of the Bureau of Prisons shall issue regulations pursuant to this subsection not later than 90 days after the date of the enactment of the Second Chance Act of 2007, which shall ensure that placement in a community correctional facility by the Bureau of Prisons is--

>    (A) conducted in a manner consistent with section 3621(b) of this title;
>
>    (B) determined on an individual basis; and
>
>    (C) of sufficient duration to provide the greatest likelihood of successful reintegration into the community.

18 U.S.C. § 3624(c).

As noted in the statute, the BOP was directed to issue regulations not later than 90 days after the date of the enactment of the Second Chance Act, to ensure that placement determinations would be conducted consistently with 18 U.S.C. § 3621(b), that the determinations would be individualized, and that the duration of placements would be sufficient.  Section 3621(b) provides:

>    (b) Place of imprisonment.  The Bureau of Prisons shall designate the place of the prisoner's imprisonment.  The Bureau may designate any available penal or correctional facility that meets minimum standards of health and habitability established by the Bureau, whether maintained by the Federal Government or otherwise and whether within or without the judicial district in which the person was convicted, that the Bureau determines to be appropriate and suitable, considering-
>
>    (1) the resources of the facility contemplated;
>    (2) the nature ad circumstances of the offense;
>    (3) the history and characteristics of the prisoner;
>    (4) any statement by the court that imposed the sentence - (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and

> (5) any pertinent policy statement issued by the Sentencing Commission pursuant to Section 994(a)(2) title 28 ... .
>
> ... Any order, recommendation, or request by a sentencing court that a convicted person serve a term of imprisonment in a community corrections facility shall have no binding effect on the authority of the Bureau under this section to determine or change the place of imprisonment.

On April 14, 2008, the BOP issued a "Memorandum for Chief Executive Officers," providing staff guidance for implementing the Second Chance Act.  The memorandum indicated that the BOP's then-existing time frame on pre-release community confinement placement was no longer applicable and should not be followed, that certain adjustments were necessary to the Program Statement 7310.04, concerning review of inmates for pre-release RRC placement, and that each inmate's pre-release RRC decision must be analyzed and supported under the § 3621(b) factors, cited above.  Among other guidelines, the memorandum provided:

> While the Act makes inmates eligible for a maximum of 12 months pre-release RRC placements, Bureau experience reflects inmates' pre-release RRC needs can usually be accommodated by a placement of six months or less.  Should staff determine an inmate's pre-release RRC placement may require greater than six months, the Warden must obtain the Regional Director's written concurrence before submitting the placement to the Community Corrections Manager.

BOP Memo, April 14, 2008, as cited in Strong v. Schultz, 559 F.Supp.2d 556, 562 (D.N.J. 2009).

Subsequently, the BOP issued the required regulations, effective October 21, 2008, setting forth procedures for

evaluating inmates' placement decisions to RRCs or home detention. See 28 C.F.R. §§ 570.20-570.22. The regulations do not include the requirement in the April 14, 2008 memo for approval from the Regional Director for pre-release RRC placement beyond six months.[2]

B.  Petitioner's Claims and Application of the Act

On September 17, 1999, Petitioner was sentenced in the United States District Court for the District of Maryland to a 188-month term of imprisonment, with four years of supervision to

---

[2] Title 28 of the Code of Federal Regulations, section 570.22 states: "Inmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. section 3621(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part."

The time frames noted are set forth in section 570.21, which provides:

> (a) Community confinement. Inmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months.
>
> (b) Home detention. Inmates may be designated to home detention as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed the shorter of ten percent of the inmate's term of imprisonment or six months.
>
> (c) Exceeding time-frames. These time-frames may be exceeded when separate statutory authority allows greater periods of community confinement as a condition of pre-release custody.

28 C.F.R. § 570.21.

follow, for conspiracy to distribute and possession with intent to distribute a quantity of cocaine, in violation of 21 U.S.C. § 846.  See United States v. Dorsey, Criminal No. 97-0391 (D.Md.).  His projected release date is February 15, 2011.

On July 29, 2009, Petitioner's Case Manager, a member of his Unit Team, met with him for a program review of Petitioner's institutional programming and to evaluate Petitioner for pre-release placement.  During the meeting, Petitioner's institutional adjustment was discussed, along with his employment history, family history, and education.  It was noted that: Petitioner does not have an established release residence nor does he have established employment; Petitioner has a moderate disciplinary history including a disciplinary transfer; and that Petitioner has some work history prior to confinement, an extensive work history during confinement, and is working toward completion of his GED high school diploma.  (Decl. of Karlton Byrd.)

Also on July 29, 2009, following this meeting, Petitioner's Case Manager completed the Residential Re-Entry Center Consideration Form, containing his recommendation for an RRC placement of 150-180 days, which he submitted to the Unit Manager.  The Unit Team accepted the recommendation.  The RRC Consideration Form reflects that the following criteria were considered: the resources of the facility contemplated, the nature and circumstances of the offense, the history and

6

characteristics of the prisoner, any statement of the court that imposed the sentence concerning the purposes for which the sentence to imprisonment was determined to be warranted or recommending a type of correctional facility as appropriate, and any pertinent policy statement issued by the U.S. Sentencing Commission.  In addition, the Unit Team considered the inmate's need for services, public safety, and the necessity of the Bureau to manage its inmate population.  In the "Comments" section, the Unit Team noted the following:

> Regarding release planning, inmate Dorsey stated he is not sure where he will live.  He hopes to reside in Michigan or Georgia.  At the present time inmate Dorsey has secured no employment; however the unit team feels that 150 to 180 days RRC placement would help to facilitate a successful transition back into the community.  According to his PSI, inmate Dorsey has had limited work history, but he indicated that he has worked as a Sweeper and in Construction work.  During his incarceration period, he has worked in the Food Service Department, Department of Public Works, as an Orderly, and in a Power Plant, where he has gained some employable skills.  Based on his overall release needs, the Unit Team feels that the recommendation for RRC is substantiated.  In addition, the Unit Team discussed methods to secure employment ..i.e. employment center, etc.

(Residential Re-Entry Center Consideration Form, Comments.)

Petitioner immediately initiated the administrative review procedure.  On July 31, 2009, following an unsuccessful attempt at informal resolution, Petitioner appealed to the Warden, asserting that the Unit Team did not perform an individual determination as required under the Second Chance Act.  The Acting Warden denied the remedy request, as did the Regional

Director at the next level. Petitioner submitted the final level of appeal to the Central Office, which it received on or about November 4, 2009. By regulation, the Central Office has 40 days to respond. It may extend the response period by another 20 days, and must inform the prisoner in writing of any extension. 28 C.F.R. § 542.18.

Petitioner submitted this Petition on December 20, 2009. In the Answer, Respondent asserts that the Central Office extended its response time, and that Petitioner had not exhausted his administrative remedies at the time he filed the Petition. Accordingly, Respondent argues that the Petition should be dismissed for failure to exhaust administrative remedies. Respondent argues, in the alternative, that the Petition is meritless.

## II. ANALYSIS

A.  Exhaustion of Administrative Remedies

Although 28 U.S.C. § 2241 contains no statutory exhaustion requirement, a federal prisoner ordinarily may not bring a petition for writ of habeas corpus under 28 U.S.C. § 2241, challenging the execution of his sentence, until he has exhausted all available administrative remedies.[3] See, e.g., Callwood v.

---

[3] The BOP Administrative Remedy Program is a multi-tier process that is available to inmates confined in institutions operated by the BOP for "review of an issue which relates to any aspect of their confinement." 28 C.F.R. § 542.10. An inmate must initially attempt to informally resolve the issue with institutional staff. 28 C.F.R. § 542.13(a). If informal

8

Enos, 230 F.3d 627, 634 (3d Cir. 2000); Arias v. United States Parole Comm'n, 648 F.2d 196, 199 (3d Cir. 1981); Soyka v. Alldredge, 481 F.2d 303, 306 (3d Cir. 1973). The exhaustion doctrine promotes a number of goals:

> (1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy.

Goldberg v. Beeler, 82 F.Supp.2d 302, 309 (D.N.J. 1999), aff'd, 248 F.3d 1130 (3d Cir. 2000). See also Moscato v. Federal Bureau of Prisons, 98 F.3d 757, 761 (3d Cir. 1996). Nevertheless, exhaustion of administrative remedies is not required where exhaustion would not promote these goals. See, e.g., Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (exhaustion not required where petitioner demonstrates futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir. 1988) (exhaustion may be excused where it "would be futile, if the actions of the agency clearly and

---

resolution fails or is waived, an inmate may submit a BP-9 Request to "the institution staff member designated to receive such Requests (ordinarily a correctional counsel)" within 20 days of the date on which the basis for the Request occurred, or within any extension permitted. 28 C.F.R. § 542.14. An inmate who is dissatisfied with the Warden's response to his BP-9 Request may submit a BP-10 Appeal to the Regional Director of the BOP within 20 days of the date the Warden signed the response. 28 C.F.R. § 542.15(a). The inmate may appeal to the BOP's General Counsel on a BP-11 form within 30 days of the day the Regional Director signed the response. Id. Appeal to the General Counsel is the final administrative appeal. Id. If responses are not received by the inmate within the time allotted for reply, "the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

unambiguously violate statutory or constitutional rights, or if the administrative procedure is clearly shown to be inadequate to prevent irreparable harm"); Carling v. Peters, 2000 WL 1022959, *2 (E.D. Pa. 2000) (exhaustion not required where delay would subject petitioner to "irreparable injury").

As noted above, Petitioner pursued his administrative remedies through the final step of submitting an appeal to the Central Office, which it received on November 4, 2009.  The forty-day response period would have expired on December 14, 2009.  On December 14, 2009, Petitioner sent an Inmate Request to his Unit Manager, asking whether there had been any response to his appeal.  She responded, the same day, that "To date there is no receipt."

While Respondent asserts that the Central Office granted itself a 20-day extension, Respondent failed to provide this Court with a copy of any notice to Petitioner.  Moreover, the "Administrative Remedy Generalized Retrieval" data attached to the Answer reflects that the Central Office purported to extend its response time on December 22, 2009, after the 40-day response period had ended and after this Petition had been submitted.  Accordingly, this Court finds that Petitioner was justified, as of December 20, 2009, in considering the lack of response to be a denial under the applicable regulations.  Thus, Petitioner had exhausted his administrative remedies by the time he submitted this Petition.

B.   The Merits of Petitioner's Claims

Here, Petitioner asserts that the Unit Team failed to perform an individual determination of his pre-release RRC placement, as required by the Second Chance Act, to be "of sufficient duration to provide the greatest likelihood of successful reintegration into the community." Petitioner asserts that, instead, the Unit Team "impermissibly" relied on the April 14, 2008, memorandum.

A similar claim was asserted in Strong v. Schultz, 599 F.Supp.2d 556 (D.N.J. 2009). In Strong v. Schultz, the petitioner Douglas Strong's RRC placement decision was made on October 2, 2008. Thus, the decision was made subsequent to the April 14, 2008, memo, but prior to the October 21, 2008, enactment of the regulations by the BOP. In Strong, the Honorable Renée Marie Bumb of this Court held that the April 14, 2008, Memorandum issued by the BOP was inconsistent with the Second Chance Act's amendments to 3624(c), because it "impermissibly constrains staff's discretion to designate inmates to a CCC for a duration that will provide the greatest likelihood of successful reintegration into the community, contrary to § 3624(c)(6)(C)."[4] Strong, 599 F.Supp.2d at 563. Thus, as to Mr. Strong, this Court held:

---

[4] Prior to 2006, the BOP referred to halfway houses as "Community Corrections Centers," or "CCCs." Today, halfway houses are more commonly known as RRCs.

11

> Accordingly, because the duration of Strong's [RRC] placement was determined pursuant to these impermissible limitations, the BOP abused its discretion in determining that Strong's placement would be for six months. This Court will therefore grant the writ to Strong, and remand the matter to the BOP with instructions to consider Strong for a longer placement in a [RRC], in accordance with the Second Chance Act, and without regard to the April 14, 2008, Memorandum.

Id. at 563.

In this case, however, Petitioner's placement decision was made after the effective date of the interim rule. Nevertheless, Petitioner alleges that his placement decision was impermissibly constrained by the six-month presumption contained in the April 14, 2008, memorandum. Plaintiff makes no factual allegations in support of this contention. To the contrary, the record reflects that the Unit Team reviewed Petitioner's criminal and correctional records and conferred with him about his post-release plans. The recommendation for 150 to 180 days RRC placement reflects consideration of the factors enumerated in the Second Chance Act.

Courts since Strong have recognized its limited holding. In cases, such as here, where Petitioner's RRC placement decision was made after the BOP issued the appropriate regulations, courts have consistently held that the Second Chance Act does not guarantee a one-year RRC placement, but "only directs the Bureau of Prisons to consider placing an inmate in a RRC for up to the final twelve months of his or her sentence." Lovett v. Hogsten, 2009 WL 5851205 (6th Cir. Dec. 29, 2009) (unpubl.); see also

Travers v. Federal Bureau of Prisons, 2009 WL 4508585 (D.N.J. Nov. 30, 2009) (Hillman, J.) (finding that "... nothing in the Second Chance Act entitles Petitioner to a halfway house placement longer than the 120-150 days already approved.  These pre-release placement decisions are committed by statute, to the discretion of the Director of the Bureau of Prisons, whose exercise of discretion is to be guided by the enumerated considerations."); Creager v. Chapman, 2010 WL 1062610 (N.D. Tex. Mar. 22, 2010) (holding that although Petitioner disagrees with her RRC placement date after consideration of the § 3621(b) factors, this "does not establish a constitutional violation, as nothing in the Second Chance Act or § 3621(b) entitles [Petitioner] or any other prisoner to any guaranteed placement in a residential reentry center[]" and "'the duration of [RRC] placement is a matter to which the [BOP] retains discretionary authority.'" (citations and quotation omitted)); Chaides v. Rios, 2101 WL 935610 (E.D. Cal. Mar. 15, 2010) ("In sum, the BOP has discretionary authority to transfer an inmate to an RRC at any time, after considering the factors set forth in 18 U.S.C. § 3621(b), and has a separate and distinct obligation to consider an inmate for transfer to an RRC for up to twelve months prior to the inmate's release date, after considering the factors set forth in second 3621(b)."  (citation omitted)).

    In distinguishing Strong, the Middle District of Pennsylvania examined a claim by a petitioner who received a 60-

13

day RRC placement recommendation. See Wires v. Bledsoe, 2010 WL 427769 (M.D. Pa. Feb. 3, 2010). In the Wires case, the court found that:

> ... since the petitioner's unit team recommended significantly less than six months (only 60 days) in a RRC, there is no basis to infer that their discretion was in any way constrained or chilled by the requirement stated in the memoranda that RRC placement beyond six months must be based on unusual or extraordinary circumstances and must be approved by the Regional Director.
>
> The petitioner was considered for placement, in a RRC. Thus, he was not denied due process. Further, there is no basis to infer in the instant case that the petitioner did not receive the individualized consideration for RRC placement required by the Second Chance Act. That petitioner disagrees with the recommendation for a 60-day placement is not a basis to issue a writ of habeas corpus.

Id. at *12. The Wires court cited Torres v. Martinez, a case also in the Middle District of Pennsylvania, which was dismissed for failure to exhaust administrative remedies. However, the Torres court also examined the merits of the case, finding:

> Torres asserts that the April 14, 2008 Bureau of Prison Memorandum imposes a policy of categoric pre-release placement for a time of six months or less because placement for a period greater than six months requires approval by a Bureau of Prisons Regional Director. The petitioner states that denying prison staff the discretion to recommend a placement longer than six months without advance written approval by a Regional Director is inconsistent with 18 U.S.C. 3624(c), as interpreted in Strong, 599 F.Supp.2d at 561-62.
>
> In Strong, the court found that the policies elaborated in the April 14, 2008 Memorandum were in violation of regulatory guideposts included in the Second Chance Act's amendments to 18 U.S.C. § 3624(c). It held that the "[m]emorandum impermissibly constrains

14

> staff's discretion to designate inmates to a CCC for a duration that will provide the greatest likelihood of successful reintegration into the community, contrary to § 3624(c)(6)(C)."
>
> There is evidence that the April 14, 2008 Memorandum has been replaced with formal federal regulations applicable to the petitioner. Interim regulations passed on October 21, 2008 state that "[i]nmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months." 28 C.F.R. § 570.21(a). Moreover "[i]nmates will be considered for pre-release community confinement in a manner consistent with 18 U.S.C. § 3521(b), determined on an individual basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community, within the time-frames set forth in this part." 28 C.F.R. § 570.22 (Oct. 22, 2008).
>
> The court finds that the Bureau of Prisons did not violate the Second Chance Act when it determined that Petitioner Torres would be placed in pre-release custody for six months, regardless of whether it followed the April 18, 2008 Memorandum or the October 2008 Regulations when it reviewed the petitioner's case. In doing so, the court declines to extend the reasoning of <u>Strong</u> to the petitioner before us. Unlike <u>Strong</u>, the petitioner has provided no reason why he requires more than six months of pre-release placement, other than that it would give him the greatest likelihood of successful reintegration.

<u>Torres v. Martinez</u>, 2009 WL 2487093, at *4-5 (M.D. Pa. Aug. 12, 2009) (internal citations omitted).

Likewise, the Eastern District of Kentucky has distinguished <u>Strong</u> in <u>Ramirez v. Hickey</u>, 2010 WL 567997 (E.D. Ky. Feb. 12, 2010), finding that the petitioner's reliance on <u>Strong</u> was misplaced, because Mr. Strong's RRC placement was determined in accordance with the memorandum. In petitioner Ramirez's case, there was nothing presented to indicate that the RRC placement

15

decision was "based upon arguably discretion-limiting criteria contained in the now defunct April 14, 2008, Memorandum. Consequently, the reasoning of Strong is inapplicable here ... ." Ramirez, at *4.

In fact, cases brought before various district courts around the country have resulted in the courts examining whether the § 3621(b) factors were considered by the BOP in making the RRC placement decision, after an individualized assessment. When the 3621(b) factors are considered, the courts are satisfied that the law was correctly applied and followed.

Here, it is clear from the record that Petitioner received individualized consideration for RRC placement in accordance with the factors enumerated in § 3621(b). Petitioner alleges that he told his Unit Team that he had "unique circumstances" that merited a longer RRC placement, including his lack of a high school diploma, uncertainty about a release residence, a long criminal history, lack of financial resources, lack of family support, and a history of alcohol abuse. Contrary to Petitioner's contention that the Unit Team did not consider his individual circumstances, most of these circumstances are reflected in the Unit Teams comments; they simply reached a different conclusion than Petitioner about the amount of time he needed in a pre-release RRC placement. This difference of opinion does not mean that the Unit Team failed to meet its statutory obligation. In addition, the Program Review Report,

dated July 27, 2009 and attached to the Case Manager's affidavit, reflects consideration of Petitioner's criminal history, substance abuse history, GED coursework, work history, disciplinary history, judicial recommendations, family relationships, release plans, and physical and mental health.  In the face of this record, something more than mere disagreement with the recommendation is required to establish that the Unit Team did not follow the requirements of the Second Chance Act.

Additionally, this Court agrees with the reasoning in Torres v. Martinez, 2009 WL 2487093, at *4-5 (M.D. Pa. Aug. 12, 2009), in that "[u]nlike Strong, the petitioner has provided no reason why he requires more than six months of pre-release placement, other than that it would give him the greatest likelihood of successful reintegration."  It appears to this Court that Petitioner's reasons to justify receiving a longer time in an RRC are not unique, as these same concerns (financial hardships, lack of family support, educational deficits) are most likely shared by many released inmates.

Further, the Strong decision does not apply to Petitioner's case, as his RRC placement decision (1) was decided after the BOP imposed appropriate regulations, and (2) was decided in accordance with the factors set forth in § 3621(b).

Finally, nothing in the Second Chance Act entitles Petitioner to a halfway house placement longer than the 150 to 180 days already recommended.  Those pre-release placement

decisions are committed, by statute, to the discretion of the Director of the Bureau of Prisons, whose exercise of discretion is to be guided by the enumerated considerations.  From the present record, the Court cannot find that the BOP has abused its discretion in this case.

Thus, based on the foregoing, this Court finds that the BOP complied with the Second Chance Act and Petitioner has not demonstrated that he "is in custody in violation of the Constitution or law or treaties of the United States ...," as required for relief under 28 U.S.C. § 2241.

### III.   CONCLUSION

For the reasons set forth above, the Petition will be denied.  An appropriate order follows.


　　　　　　　　　　　　　　　　　　　　 **s/ Jerome B. Simandle**
　　　　　　　　　　　　　　　　　　　　Jerome B. Simandle
　　　　　　　　　　　　　　　　　　　　United States District Judge

Dated:  **July 12, 2010**